IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION


UNITED STATES OF AMERICA,

                    Plaintiff,

        v.                          No. 4:18CR607-BRW

                                    November 5, 2020
VALEN RAY GILMER,                   Little Rock, Arkansas
                                    2:04 p.m.
                    Defendant.



**TRANSCRIPT OF SENTENCING HEARING**
BEFORE THE HONORABLE BILL WILSON,
UNITED STATES DISTRICT JUDGE


APPEARANCES:

On Behalf of the Government:

        MS. AMANDA FIELDS, by
           United States Attorneys Office
           Eastern District of Arkansas
           425 West Capitol Avenue, Suite 500
           Post Office Box 1229
           Little Rock, Arkansas  72203-1229

On Behalf of the Defendant:

        MS. LATRECE E. GRAY, by
           Federal Public Defenders Office
           1401 West Capitol Avenue
           Suite 409
           Little Rock, Arkansas 72201




        Proceedings reported by machine stenography and displayed
in realtime; transcript prepared utilizing computer-aided

Margaret M. Kruse, RMR, CRR, CSR
United States Court Reporter

I N D E X (November 5, 2020)

| WITNESSES FOR THE PLAINTIFFS | Direct | Cross | Redirect | Recross |
|---|---|---|---|---|
| TAMARA GILMER | 5 | | | |

Margaret M. Kruse, RMR, CRR
United States Court Reporter

P R O C E E D I N G S

- - - o0o - - -

(Proceedings commenced in open court, defendant present, at 2:04 p.m.)

THE COURT:  Good afternoon.  Be seated, please.  We're here today for sentencing in U.S. against Valen Ray Gilmer, case No. 4:18CR00607.  Mr. Gilmer is here with his lawyer, Ms. Gray.  The prosecution is represented by Ms. Fields.  Are the parties ready?

MS. GRAY:  Yes, Your Honor.

MS. FIELDS:  Yes, Your Honor.

THE COURT:  All right.  We were here a couple or so weeks ago and I indicated I may depart upward.  The defense requested an extension, it was given.  And I have received and reviewed the defense pleading.  I re-read the letters.  Are we ready to go?

MS. GRAY:  Yes, Your Honor.

MS. FIELDS:  Yes, Your Honor.

THE COURT:  All right.  I'll hear from the defense.

MS. GRAY:  Thank you, Your Honor.

Your Honor, we stand on the sentencing memorandum that was filed.  I'm sorry.  Let me go to the podium.

We stand on the sentencing memorandum that was filed in this case.  Our main points to be made are that there's nothing egregious about this case that would warrant an upward

departure.  Those things that the Government listed as to why they want an upward departure have already been taken into account in the guidelines with regards to the types of guns Mr. Gilmer had, with regard to the number of guns Mr. Gilmer had.

Other than the fact that Mr. Gilmer is a convicted felon, there was nothing illegal about those guns.  They're sold throughout the United States.  And Mr. Gilmer himself, again, other than his status as a felon, there was no crimes being committed with those guns.

When we were here last, there was an issue made about Mr. Gilmer's involvement in his daughter's life.  May I approach, Your Honor?  I have photos that I've shown the Government.  Make them Defense Exhibit 2.

Your Honor, I asked that those be marked as Defense Exhibit 2.  They are photographs of Mr. Gilmer.  If the Court would allow it, Mr. Gilmer's both mother and grandmother are here in the courtroom.  And Ms. Tamara Gilmer would like to address the Court.

THE COURT:  Okay.  I'll ask the clerk to mark these photos.  I'll ask the clerk to mark them as defense exhibits.

(Defense Exhibits 1 and 2 marked.)

MS. GRAY:  Ms. Gilmer, if you'll state your name.

THE COURT:  Let's have her sworn and take the stand, please.

(Witness sworn.)

TAMARA GILMER, PLAINTIFF'S WITNESS, PREVIOUSLY SWORN

DIRECT EXAMINATION

BY MS. GRAY:

Q.    Mr. Gilmer, would you state your name for the record.

A.    My name is Tamara Gilmer.

Q.    T-a-m-a-r-a?

A.    Yes, ma'am.

Q.    How are you related to Valen Gilmer?

A.    I am his mother.

Q.    Okay.  There was mention in our last sentencing hearing about Zaniah, Z-a-n-i-a-h, Gilmer.  Who is that to you?

A.    She is my granddaughter.

Q.    Who is she to Valen?

A.    She is his daughter.

Q.    What did you want the Court to know about Mr. Gilmer's relationship with Zaniah and Zaniah's mother?

A.    I wanted the Court to know when he had Zaniah, he was only 16 years old and she was in her 20s and he was still an outstanding father.

He's had her through summers.  He's helped with everything from school supplies to birthdays, to, I mean, everything.  I mean, he has not missed anything in her life except for now that he's been gone.  Other than that, he's been a big part of her life always.

Margaret M. Kruse, RMR, CRR
United States Court Reporter

Q.   What's the relationship now between Mr. Gilmer and Zaniah's mother?

A.   It's not good because they can't be together, so it's no relationship at all.

Q.   How has that affected Valen Gilmer's ability to be in his life?

A.   She has cut us completely off because of that.

Q.   When is the last time you physically saw Zaniah?

A.   Two, maybe three years ago.

Q.   Do you know what's going on with the child support order?

A.   Yes.  The only reason why he was ordered on child support is because she needed assistance, government assistance, and they require you to put the parent -- the absent parent on the child support until she was able to get a job and support herself.  So that's the only reason why he was on child support.

Q.   Okay.

A.   And after that, he was off.  But he's always taken care of his infant child.

Q.   What is it that you'd like the Court to know about Valen?

A.   I would like the Court to know that Valen is an outstanding young man.  He's made some mistakes in his life, but he's awesome.  He helps anybody that he can.  He cares about everybody.  I mean, there's nothing that he won't do to help. You know, he's just -- he's an all-around -- he's an outstanding guy.  And he's my son and my only son and I love him.  And I

just wish that things were different and. . .

Q.   It's okay.

A.   I miss him.  I just wish he would come home.

MS. GRAY:  That's all I have, Your Honor.

MS. FIELDS:  I don't have any questions, Your Honor.

THE COURT:  You may stand down.  Thank you.

(Witness excused.)

MS. GRAY:  Your Honor, that's all the defense has. Again, we're asking for a guideline sentence in light of the facts and circumstances surrounding Mr. Gilmer's offense.  And we feel like a 37- to 46-month range is sufficient to address the 3553(a) factors.

MS. FIELDS:  Your Honor, the United States is requesting an upward variance based on the 3553(a) factors that we're all familiar with.

The nature and circumstances of this particular offense are particularly problematic for the United States given the fact that Mr. Gilmer's two prior felony convictions are for theft by receiving.  The property in that conviction was a stolen .32-caliber Beretta handgun.  Inside the car with Mr. Gilmer and the stolen gun was also an AK47 rifle.  And Mr. Gilmer had marijuana in his pocket.

Your Honor, his second felony conviction is a felon in possession of a firearm.  According to the presentence report, a North Little Rock Police Department undercover officer was

sitting in an uncover vehicle when Mr. Gilmer approached with a loaded .44 caliber handgun in his hand.  It's concerning to the United States in that charge that Mr. Gilmer was wearing body armor.

Mr. Gilmer was on probation when he committed this second felony offense.  All of his felony charges as an adult involve firearms and we're here again with firearms-related issues.

This defendant has had a disregard for the law and he has failed repeatedly to abide by the terms of his probation in state court.  His probation has been revoked twice in his first case, and being on supervision and being on probation didn't stop Mr. Gilmer from having a bedroom full of ammunition and weapons.

The United States does not feel that a guideline range in this case reflects the seriousness of this charge as well as the need for the sentence to promote respect for the law.  Your Honor, there's also issues surrounding public safety regarding this defendant.  In the defendant's sentencing memorandum, he indicates that he is no longer in a gang and he's a practicing Christian, which is wonderful for Mr. Gilmer.

However, he also told a detective after he was advised of his Miranda rights that he would drive by a rival gang member's homes with what he claims were fake firearms.  Now, that's unbelievable to the United States that those firearms were fake.

I don't know why in the world anyone would be driving by a rival gang member's home with a fake firearm.  But that is putting an inordinate amount of people in danger.  That's a dangerous act.  And it shows the defendant's character.

Your Honor, it's concerning to the United States that also in Mr. Gilmer's bedroom there was a drone magazine that was equipped to handle .40-caliber rounds.  There were .40-caliber extended magazines also found in a shoebox in the defendant's bedroom.  That indicates to the United States that at some point the defendant had access to a .40 caliber handgun that's not charged.  There was not a handgun recovered, but I believe that that's circumstantial evidence that at one point Mr. Gilmer had possession of a .40-caliber handgun.

Your Honor, Mr. Gilmer makes a point that but for the defendant's status as a felon, he could legally purchase and obtain firearms.  However, Mr. Gilmer also admitted that he smokes marijuana daily.  So even if he wasn't a felon, he's still addicted to a controlled substance and uses it on a daily basis.  That also prohibits him from possessing a firearm.

Your Honor, finally, there were several hundred rounds of ammunition that were found in the defendant's bedroom.  Each round of the ammunition that the defendant possessed is another felony charge.  None of that is reflected in his guideline range.  There was a substantial amount of ammunition in Mr. Gilmer's bedroom.  None of that is reflected in his

guideline sentencing range.  Mr. Gilmer is a danger to the community, and the United States again would request a 72-month sentence in this case.  Thank you.

MS. GRAY:  May I respond, Your Honor?

Mr. Gilmer would like to address the Court.

THE DEFENDANT:  How are you doing today, Mr. Wilson.  My name is Valen Gilmer.  I'm going to go back to my first felony that I caught when I was 18 years old.  In that vehicle, I had a .32 Beretta handgun.  There was no AK47 found in the car.  That's not a true statement.

Okay, the second incident, when I had the body armor, somebody was trying to harm my family, man.  I put my life on the line.  I put my life on the line.  It didn't have nothing to do with endangering the community.  Somebody shot a firearm when my mama was standing in the street.  If I'm wrong for defending my family, then so be it, do what you will.  But at the end of the day, I will lay down my life for anything that I love, especially my parents.

Somebody shot a firearm while my mama was in the street.  It could have hit her.  It could have harmed anybody around her.  I found out who it was.  They also tried to shoot me.  She didn't mention that.  This time, the reasons I'm here now, somebody shot my house up.  I'm not supposed to have firearms so I'm just living to die.  That's what I'm getting out of this, I'm living to die.  I'm not supposed to protect -- we dying

Margaret M. Kruse, RMR, CRR
United States Court Reporter

every day.  I'm living to die.

Only thing I do -- man, I love life.  I want to continue to live.  I want to take care of my kids.  I want to live graciously, but I can't do that there.  I can't support them there.

I got PTSD.  I'm bipolar/schizophrenic.  I been through a lot in my life.  My life is not a walk through the park.  I been through a lot.  I been through stuff that you could only imagine and I'm still here for a reason and it's because I take drastic measures to live.  I'm not here to harm.  I haven't hurt anyone.  I haven't shot anyone.  There's not one incident that you can pull up where I've harmed somebody.

The incident that she's speaking of with the rival gang member, I stayed across the street from this man for a year.  This is my neighbor.  So with that being said, it have nothing to do with gang affiliation or nothing of that nature.  He has some worries with my at the time girlfriend and I addressed the situation.  He got a little crazy.

So it's a couple incidents happened out there.  The police -- everything is in the police reports.  There's nothing to back up what the prosecutor said.  She don't have not one record that she can pull up to prove anything that she said from the first incident to the last.

That's all I want to say, Mr. Wilson.

MS. GRAY:  Thank you, Your Honor.

Margaret M. Kruse, RMR, CRR
United States Court Reporter

THE COURT:  I believe the record supports an upward variance based on everything presented and a review of 3553, the prosecutor's statement, the defense's rebuttal.  I believe that an upward variance is justified, not only justified but needed for, among other things, the safety of the public.

So Mr. Gilmer is committed to the custody of the Bureau of Prisons to be imprisoned for a term of 72 months.  I recommend that he participate in nonresidential substance abuse treatment, mental health counseling and educational and vocational programs during incarceration.

Upon release from prison, he'll be on supervised release for three years.  He'll have to report to the probation office in the district in which he's released within 72 hours of release from the custody of the Bureau of Prisons, and he must comply with all mandatory and standard conditions that are in effect.

He'll be required to participate in a substance abuse program under the guidance of the probation office.  The program may include drug and alcohol testing, outpatient counseling and residential treatment.  He can't use any alcohol during his treatment.  He'll be required to pay for the cost of treatment at the rate of $10 per session, with a total cost not to exceed $40 per month based on his ability to pay as determined by the probation office.  If he's not financially able to pay the cost of treatment, the co-payment requirement will be waived.

He'll have to cooperate in the collection of DNA as directed by the probation officer.  No fine is imposed since the financial report indicates that he couldn't pay a fine, installment or lump sum.  A $100 special assessment is mandatory -- special assessment of $100 is mandatory and hereby imposed.

Are there any objections to the form of the sentence?

MS. GRAY:  Not the form, Your Honor, but we'd just maintain our objection in terms of the Court varying upward and violating the rule of reasonableness.

THE COURT:  Your objection is noted.  It's overruled.  Your exception is saved.

MS. FIELDS:  No objections, Your Honor.

THE COURT:  All right.  Mr. Gilmer, you have a right to appeal your conviction if you believe that your guilty plea was somehow involuntary or if there's some other fundamental defect in the proceeding that was not waived by your guilty plea.

You also have a statutory right to appeal your sentence under certain circumstances, particularly if you think the sentence is contrary to law.

With very few exceptions, a notice of appeal must be filed within 14 days of judgment being entered in the case.  If you're unable to pay the cost of appeal, you may apply for leave to appeal in forma pauperis.  If you ask, the Clerk of the Court

will prepare and file a notice of appeal on your behalf.

Is there anything else that we need to tend to.

MS. GRAY:  If the Court could recommend FCI Texarkana, which is closest to his family here in North Little Rock.

THE COURT:  I will recommend that.  Anything else?

DEPUTY COURTROOM CLERK:  Is there a forfeiture of ammunition?

MS. FIELDS:  Yes, Your Honor.  The United States would request that the defendant's ammunition and firearms be forfeited pursuant to the superseding information.

THE COURT:  Granted.

MS. FIELDS:  Thank you, Judge.

THE COURT:  Anything else?

MS. GRAY:  Not from defense, Your Honor.

THE COURT:  We are in recess.  You can be at ease.

MS. FIELDS:  Thank you, Judge.

(Proceedings concluded at 2:37 p.m.)

CERTIFICATE

I, Margaret M. Kruse, Official Court Reporter, do hereby certify that the foregoing is a true and correct transcript of proceedings in the above-entitled case.


/s/ Margaret M. Kruse, CSR, RMR, CRR

Date:  November 19, 2020

United States Court Reporter


Margaret M. Kruse, RMR, CRR
United States Court Reporter